**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Case No.: 24-cr-006 (DLF) |
| v. | : : : | 18 U.S.C. § 1752(a)(1) (Entering and Remaining in a Restricted Building or Grounds) |
| **JOHN LIVINGSTON,** Defendant. | : : : : | 18 U.S.C. § 1752(a)(2) (Disorderly and Disruptive Conduct in a Restricted Building or Grounds) |

**STATEMENT OF OFFENSE**

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, John Livingston, with the concurrence of the defendant's attorneys, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

*The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police ("USCP"). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2. On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote

count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday, November 3, 2020. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside.

5. At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. Officers with the D.C. Metropolitan Police Department were called to assist officers of the USCP who were then engaged in the performance of their official duties. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6. At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted

those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.9 million dollars for repairs.

7. Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *John Livingston's Participation in the January 6, 2021, Capitol Riot*

8. In the days leading up to January 6, 2021, LIVINGSTON posted a series of TikTok videos relating to his intent to participate in demonstrations in Washington, D.C. on January 6. For example, on December 28, 2020, he posted a video using a filter that created the appearance of blue flames surrounding LIVINGSTON. Text superimposed upon the image reads: "Jan6th were taking the country back".



9.      On January 6, 2021, LIVINGSTON attended the "Stop the Steal" rally at the area near the White House known as the "Ellipse." He posted a video to his TikTok account depicting a portion of the crowd present near the Washington Monument for the rally.



10. After attending the rally, LIVINGSTON walked along Constitution Avenue and, later, Pennsylvania Avenue toward the U.S. Capitol. LIVINGSTON then entered the restricted grounds of the Capitol near the Peace Monument.



11. LIVINGSTON knew at the time he entered U.S. Capitol grounds that he did not have permission to be present on the grounds. LIVINGSTON continued to advance toward the Capitol building and eventually made his way to the West Plaza near the base of the Capitol building. While on and near the West Plaza, LIVINGSTON could hear people loudly chanting. He could also see police officers guarding the Capitol and plumes of tear gas billowing in the air.

12. LIVINGSTON made multiple Facebook posts commenting on the conditions he was experiencing while on Capitol grounds. In one post, he wrote simply "Tear gas is a joke." He further commented on this post "it had A smokey flavor," in reference to the tear gas.

13. In another Facebook post, LIVINGSTON wrote, "Congress shooting flairs for distress call. Too late now bitches."

14. Eventually, the crowd began to push past law enforcement at the northwest stairs. LIVINGSTON then climbed on top of a railing alongside these stairs and waved an American flag toward the crowd.



15. LIVINGSTON continued up the stairs to the Upper West Terrace and eventually entered the Capitol building through the Senate Wing Door at 2:21 p.m.—approximately nine minutes after the initial breach of the Capitol building, which occurred at that door.



16.    After briefly remaining in the area just inside the Senate Wing Door, LIVINGSTON began walking south toward the Crypt at approximately 2:24 p.m.

17.    Just before entering the Crypt, LIVINGSTON recorded a video, posted to his TikTok account, in which he can be heard saying "Pence fucked us. . . He refused to do it." While in this area, other rioters near LIVINGSTON were shouting "NANCY, NANCY," in reference to Speaker of the House Nancy Pelosi. In fact, LIVINGSTON understood that members of Congress and Vice President Pence were at the Capitol that day to participate in the Certification of the Electoral College vote.

18.    LIVINGSTON advanced further into the Capitol building and entered the Crypt. While there, he used his cellular phone to film the events around him.



19.     At approximately 2:31 p.m., LIVINGSTON left the Crypt and returned to the area near the Senate Wing Door at approximately 2:32 p.m. While there, he saw numerous U.S. Capitol Police officers working to secure the area.

20.     LIVINGSTON exited the Capitol building through a broken window next to the Senate Wing Door at approximately 2:34 p.m.



*Elements of the Offense*

21. The parties agree that 18 U.S.C. § 1752(a)(1) requires the following elements:

    a. First, the defendant entered or remained in a restricted building or grounds without lawful authority to do so; *and*

    b. Second, the defendant did so knowingly.

22. The parties agree that 18 U.S.C. § 1752(a)(2) requires the following elements:

    a. First, the defendant engaged in disorderly or disruptive conduct in, or in proximity to, any restricted building or grounds;

    b. Second, the defendant did so knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions; *and*

    c. Third, the defendant's conduct occurred when, or so that, his conduct in fact impeded or disrupted the orderly conduct of Government business or official functions.

*Defendant's Acknowledgments*

23. The defendant knowingly and voluntarily admits to all the elements as set forth above. Specifically, the defendant admits that:

   a. LIVINGSTON knew at the time he entered U.S. Capitol grounds that he did not have permission to be present on the grounds;

   b. Prior to entering U.S. Capitol grounds, LIVINGSTON was aware that Vice President Pence would be present at the Capitol that day;

   c. While at the Capitol, LIVINGSTON intended to impede or disrupt the orderly conduct of Congress; *and*

   d. Because Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, LIVINGSTON's presence on Capitol grounds on January 6, 2021, disrupted the orderly conduct of a session of Congress.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:   */s/ Sean J. Brennan*
      SEAN J. BRENNAN
      Assistant United States Attorney
      NY Bar No. 5954128
      601 D Street NW
      Washington, DC 20530
      sean.brennan@usdoj.gov
      (202) 252-7125

## DEFENDANT'S ACKNOWLEDGMENT

I, John Livingston, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 9/05/24

JOHN LIVINGSTON
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 09-05-2024

TODD M. RICHMAN
Attorney for Defendant

Date: 09-05-2024

LAUREN ROSEN
Attorney for Defendant